PATTERSON, Judge.
Appellant, Frank Johnson, Jr., as personal representative of the estate of Charles J. Allen, deceased, appeals from a final order which determined that appellee, United States of America, was the beneficiary of certain share certificates which the decedent maintained at Bay Pines Federal Credit Union. We reverse.
Charles J. Allen became a member of the Bay Pines Federal Credit Union (Credit Union) on December 3, 1981. At that time Mr. Allen, like all new members, was required to open a primary share account at the Credit Union. The Credit Union assigned to him account number 2506 and identified his primary share account as 2506-013.
On June 4, 1986, Mr. Allen executed a designation of beneficiary for payable-upon-death account form which referenced account number 2506-013. The designation provided that the funds in the account were held in trust and that on his death the funds on deposit in the account would be payable to the Veterans’ Administration (V.A.).
On November 19, 1986, Mr. Allen purchased a share certificate in the amount of $10,000 from the Credit Union, identified as account number 2506-0B3, and renewed three share certificates each in the amount of $10,000, identified as account numbers 2506-0C3, 2506-0D3, and 2506-0E3. On November 25, 1986, Mr. Allen purchased two more share certificates in the amount of $10,000 each, identified as account numbers 2506-0F3 and 2506-0A3. All six share certificates were in the name of Charles J. Allen alone, and the certificates did not indicate any other type of ownership on their face, nor did the certificates incorporate by reference any other document concerning ownership.
Mr. Allen died on January 24, 1987. At the time of his death, Mr. Allen had on deposit with the Credit Union the funds in his primary share account and the funds in his six share certificates. All of the share certificates were scheduled to mature in May of 1987. Appellant made a written demand on the Credit Union to pay over the funds represented by the share certificates to the personal representative. Appellant did not make a demand for the funds maintained in the primary share account. The Credit Union failed to honor *297 the demand and indicated its belief that the designation of beneficiary form which Mr. Allen executed as to account 2506-013 controlled the share certificates, and therefore, the share certificates would be payable to the Y.A. This litigation ensued.
At trial, Mr. Dominick, president of the Credit Union, admitted that each share certificate contained the complete terms on its face as to interest rate, maturity date, principal amount, name, address and ownership.
Denise Pruitt, an account representative at the Credit Union, testified, over appellant’s objection, as to what she believed was Mr. Allen’s intent when he signed the payable-upon-death form. Ms. Pruitt, however, admitted that there was nothing on the share certificates which indicated that the terms of the payable-upon death designation were applicable to those certificates. Ms. Pruitt explained to Mr. Allen, at the time he bought the share certificates, that if he died prior to their expiration, they would go to the beneficiary named on his payable-upon-death card. She explicitly told Mr. Allen that the money from the share certificates would go to the Y.A. Upon the death of a member, it was the policy and practice of the Credit Union that all monies in all suffix accounts under a share account number such as 2506 would be paid to the beneficiary named on the payable-upon-death card.
Share certificates represent a purchase of shares in a Credit Union. Both parties agree that share certificates are contractual in nature. Each share certificate states the name of the owner, the amount of the certificate, the maturity date and the dividend rate. The certificates further provide, pursuant to federal regulations, that dividends are paid at the specified rate only if there are sufficient earnings available. The certificates are non-transferrable and provide penalties for withdrawal prior to the maturity date. Mr. Allen’s certificates provided that dividends would be paid to regular share account number 2506-013.
Appellees argue that the policies and procedures of the Credit Union are an integral part of a share certificate contract, the terms of which Mr. Allen both understood and willingly accepted. Appellees contend that the Credit Union did not vary the terms of its share certificates in determining that the V.A. was entitled to possession of Mr. Allen’s share certificates. Appellees urge that the policies and procedures mandated that the Credit Union deem the share certificates to be part of a member’s basic account, because a member can only have one account at a Credit Union. It is appel-lees’ position that the payable-upon-death beneficiary card controlled primary account No. 2506-013, as well as the share certificates because the certificates are subac-counts of the primary account. We cannot agree.
The testimony at trial established that there is no rule, regulation or law which states that the conditions which govern the primary share account of a member will also govern and control the disposition of the share certificates. Federal regulations do provide, however, at 12 C.F.R. 701.-35(b)(1987):
A federal credit union shall accurately represent the terms and conditions of its share, share draft and share certificate accounts in all advertising, disclosures or agreements, whether written or oral.
The payable-upon-death form specifically referenced number 2506-013. Each share certificate has a different suffix and is a separate contractual obligation from the primary share account. The share certificates are clear and unambiguous on their face. They name Charles J. Allen as the owner of the certificates. Upon his death, therefore, the certificates pass to his estate. When parties put their agreement in writing, it is presumed that the whole agreement is contained in the writing. Azalea Park Utilities v. Knox-Development Corp., 127 So.2d 121 (Fla. 2d DCA 1961). Because the share certificates and the payable-upon-death form are unambiguous, they must be given their clear meaning and enforced in accordance with their terms. Paddock v. Concrete Industries, Inc., 154 So.2d 313 (Fla. 2d DCA 1963). Therefore, it was error for the trial court to admit evidence relating to the decedent’s *298 intent to leave his money to the Y.A. It is clear that “parol evidence is inadmissible to vary, contradict or add to the terms of an unambiguous written instrument.” Searle v. Fortune Federal Savings and Loan Ass’n, 480 So.2d 187, 188 (Fla. 2d DCA 1985).
Accordingly, the trial court erred in holding that the payable-upon-death form which pertained to Mr. Allen’s primary share account controlled the disposition of the share certificates. The order of the trial court is reversed with directions that the share certificates be paid to the personal representative of Mr. Allen’s estate.
FRANK, A.C.J., and HALL, J., concur.